STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Valois Airplane Storage Application | } | Docket No. 254-11-07 Vtec |
| (Appeal of Valois) | } | |
| | } | |

Decision and Order on Motions for Summary Judgment on Question 5

Appellant-Applicant Paul Valois (Appellant) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Addison denying his most recent zoning application regarding the use of a 1,100-foot-long mowed grass landing strip in connection with the storage of his airplane on his property. Appellant is represented by Marsha Smith Meekins, Esq. The Town is represented by Donald R. Powers, Esq. Interested Persons John M. Baker, Janice and Pierre Barre, Eric J. and Lisa A. Campbell, Jane and Phillip Grace, Deborah G. and Leon J. Laframboise, and Dale M. and Diane L. Rose have entered their appearances representing themselves.

The parties have each moved for summary judgment on the remaining issue in this appeal, relating to Appellant's claim that he has been impermissibly selectively treated by the Town in comparison with the Town's treatment of another landowner in the Town of Addison. The following facts are undisputed unless otherwise noted.[1]

Procedural History

In Docket No. 226-12-04 Vtec, Appellant appealed the Planning Commission's denial of approval of a site development plan to construct a private airplane landing strip on his residential property. The primary issue in that appeal was whether a

---

[1] Some of the following facts are taken from this Court's decision in a related appeal, In re Appeal of Valois, No. 7-1-06 Vtec (Vt. Envtl. Ct. May 3, 2007) (Wright, J.).

1

private landing strip falls within the use category of "private recreation facility" in the Zoning Regulations. The Court's August 24, 2005 summary judgment decision referred the parties to its earlier decision in In re Appeal of Spencer, No. 24-2-98 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. May 17, 1999), interpreting the definition of outdoor recreation in the Addison Zoning Ordinance to be exclusive of motorized recreation. Docket No. 226-12-04 Vtec was placed on inactive status pending the conclusion of a later-filed related appeal; a final judgment order was entered in it effective on May 9, 2007.

In Docket No. 7-1-06 Vtec, Appellant appealed the ZBA's decision upholding the Zoning Administrator's denial of a permit for the landing strip as an accessory use to Appellant's single-family residential use of his property. In re Appeal of Valois, No. 7-1-06 Vtec (Vt. Envtl. Ct. May 3, 2007) (Wright, J.). Appellant had proposed a maximum of ten takeoffs and ten landings in any calendar year. Id. at 3. After an evidentiary hearing and a site visit, the Court made extensive findings of fact, including that the proposed landing strip has certain deficiencies that preclude its approval by VTrans under 5 V.S.A. § 207 unless those deficiencies are corrected. Id. at 4. Some of the corrections involve trees that are not within Appellant's control.

The decision in Docket No. 7-1-06 proceeded to analyze the characteristics of all the airports and landing strips presented in evidence by Appellant as being comparable to his proposed landing strip. Id. at 6–8. The Court determined that Appellant's proposed private landing strip is not "customarily incidental" to an inland single-family residential use, that is, one surrounded by other landowners' properties, and therefore that the proposed private landing strip does not qualify as an accessory use to his residential use of the property. Id. at 8–9. Because the proposal did not meet the "customarily incidental" prong of the accessory use definition, the Court did not reach the question of whether the proposed use would be "subordinate" to the residential use of Appellant's property. Id. at 9–10.

2

The decision in Docket No. 7-1-06 Vtec left open the following question:

> whether the off-season storage of hobby conveyances (such as aircraft, boats, recreational vehicles, and snow machines) is sufficiently common to make just the off-season storage of the airplane an accessory use to the residential use of the property, if the landing strip were capable of being approved for safety for that single annual trip by the necessary state or federal aeronautical regulatory authorities.

Id. at 10 n.11.

In the application that is the subject of the present appeal, Docket No. 254-11-07 Vtec, Appellant provided a narrative statement that he was seeking a zoning permit "for 'aircraft storage' at my property . . . and to 'mow and maintain an 1,100 foot grass strip for my current privately owned single-engine, fixed wing airplane aircraft' or an aircraft of similar size or smaller." The narrative stated that the grass strip would only be used by Appellant as the owner of the single-family residence on the property. It requested approval "to store my aircraft at my property in the off-season (winter and early spring) just as the owners of similar hobby conveyances such as recreational vehicles, sailboats, motorboats, all terrain vehicles, and/or snow machines do within the Town of Addison." The narrative did not state whether Appellant was a resident of the single-family residence at the property, nor did it propose a particular number of takeoffs and landings to occur in connection with the proposed storage use.

At the telephone conference held on an audio-taped record on November 3, 2008 in the present case, Attorney Meekins reported that, in the present application, Appellant was requesting approval of "a minimum of" ten takeoffs and ten landings per calendar year.[2] Appellant specifically declined to limit the approval request to only the single annual landing (for off-season storage) and single annual takeoff (after off-season storage) left open by the 2007 decision in Docket No. 7-1-06 Vtec.

---

[2] Revised to "no more than" ten takeoffs and ten landings in Appellant's Motion for Summary Judgment, at page 2.

3

The Town does not contest Appellant's right to store the airplane in the storage building, so that all that remained in the present application was whether the use of the mowed grass strip for some limited number of takeoffs and landings could be approved as being accessory to the allowed off-season storage use[3] of the storage building.

The Court issued two summary judgment decisions in the present case. The September 23, 2008 decision determined that the most recent application was not deemed to be approved. The December 11, 2008 decision resolved the remaining questions in favor of the Town, except for Question 5, relating to Appellant's claim of selective treatment, which the parties agreed to present to the Court through cross-motions for summary judgment.

Question 5 – Selective Treatment

Appellant claims that he has been selectively treated by the Town, in comparison to the Town's treatment of a grass airstrip on the property of Mr. Thomas Spencer, in the same zoning district of the Town of Addison.

In 1992 the Zoning Administrator granted approval to Thomas Spencer to mow and maintain a 2000-foot-long grass strip on a large parcel of property in the LDRA-5 zoning district of the Town of Addison. Appellant's Ex. 9. That administrative approval was treated as unappealed by this Court in a subsequent related appeal, Docket No. E96-124 (see Appellant's Ex. 6 at 2), and no party in the present appeal claims that it was ever appealed to the ZBA or reviewed by a court. Regardless of whether it was properly granted under the then-zoning ordinance or not, the decision could not thereafter be challenged. 24 V.S.A. § 4472(d); Levy v. Town of St. Albans

---

[3] It is important to note that the "accessory use" issue in the present appeal relates to whether some limited number of flights can be approved as accessory to the storage use of the storage (hangar) building on the property, as distinct from the issue in No. 7-1-06 Vtec of whether the airstrip use was accessory to the residential use of the property.

4

Zoning Bd. of Adjustment, 152 Vt. 139, 142–43 (1989).

As described in In re Spencer, No. 24-2-98 Vtec, slip op. at 1 (Vt. Envtl. Ct. May 17, 1999), Mr. Spencer then subdivided his property, retaining one residential lot and also retaining ownership of a separate 43.2-acre parcel containing the 2000-foot-long, fifty-foot-wide grass airstrip. Several other parcels in the subdivision fronted on Route 22A; the airstrip parcel was located easterly of the Route 22A parcels.

The airstrip received VTrans approval for Mr. Spencer's personal use. Appellant's Ex. 12. In January of 1996, he applied to VTrans to have the personal use restriction lifted, in connection with his zoning applications to allow other owners in his subdivision to use the airstrip. Appellant's Ex. 8.

In October of 1996, Mr. Spencer applied for, and in January 1997 was granted, conditional use approval to allow himself and one other lot owner in the subdivision to use the airstrip. Appellant's Ex. 5. That approval also was not appealed and became final. 24 V.S.A. § 4472(d); In re Spencer, No. 24-2-98 Vtec, slip op. at 1 (Vt. Envtl. Ct. May 17, 1999).

The first appeal in Environmental Court involving the Spencer property was Docket No. E96-124,[4] an appeal of a decision regarding an application to expand the use of the Spencer airstrip under the conditional use category of "commercial recreation area." That case was concluded on the record of its May 21, 1997 hearing (a partial transcript of which has been submitted as Exhibit 6 to Appellant's own Motion for Summary Judgment in the present case). The Court granted the Town's motion to dismiss the appeal on the basis that the proposed use did not fall within a conditional use category.

Mr. Spencer's subsequent application to allow all the owners who purchased lots

---

[4] This docket number results from a former system of numbering used by the Environmental Court from its inception in 1990 through late 1996; it corresponds to Docket No. 124-8-96 in the present system.

in the subdivision to use the airstrip, either as a private, non-profit flying club, or as a private, non-profit outdoor recreational area, was denied by the ZBA in late 1997 or early 1998. It was then denied by this Court in In re Appeal of Spencer, No. 24-2-98 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 17, 1999), and was not further appealed.

In the present case, rather than pursuing an application for some number of landings and take-offs as accessory to the storage use of the hangar building, Appellant in his summary judgment motion now essentially requests to be given an opportunity that the Court has twice ruled was not even available to Mr. Spencer: to have his application treated as one for conditional use approval. The Court has consistently ruled in the two Spencer cases and in Appellant's own appeal in Docket No. 224-12-04 Vtec that the Addison Zoning Ordinance does not provide for conditional use approval of this proposed use. It would not be reasonable now to require the ZBA to perpetuate this error on the basis of equitable estoppel, as the "true facts" are that the proposal does not fall within a conditional use category. See In re Griffin, 2006 VT 75, ¶¶ 17–22, 180 Vt. 589 (mem.) (no estoppel based on previous zoning administrator's assurances that permit not required); In re Mastelli Constr. Application, No. 220-10-07 Vtec, slip op. at 10 (Vt. Envtl. Ct. Sept. 19, 2008) (Durkin, J.).

To make out the claim of selective treatment raised in Question 5, Appellant must show that he has been selectively treated, compared with others who are "similarly situated," and that the selective treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." In re Letourneau, 168 Vt. 539, 543 (1998) (citing Crowley v. Courville, 76 F.3d 47, 52–53 (2d Cir. 1996)).

A showing of a municipal board's application of varying standards in issuing permits cannot be the sole basis for a finding of unconstitutional discrimination. "Mistakes and inadequacies will inevitably occur in the process of zoning

6

administration. When they do, these irregularities do not have the effect of leaving the municipality without an ability to enforce its zoning ordinance against anyone." Id. at 550. It is therefore particularly important for parties claiming selective treatment to meet their burden of demonstrating that the selective treatment was based upon impermissible considerations or bad intent. Id.; e.g., In re Mulheron, No. 2002-090, slip op. at 3 (Vt. Sept. 25, 2002) (unpublished mem.) (citing Letourneau, 168 Vt. at 549) (declining to find selective treatment where there was no evidence of impermissible considerations or bad intent); Village of Woodstock v. Shaw, No. 162-8-00 Vtec, slip op. at 4 (Vt. Envtl. Ct. May 16, 2001) (citing Letourneau, 168 Vt. at 549) (same).

Appellant has not even alleged[5] that the claimed selective treatment was based on any of the cited "impermissible considerations" or bad intent. Because he has not alleged facts sufficient to meet the second prong of the selective treatment analysis, summary judgment must be entered in favor of the Town on Question 5.

With regard to the first prong, Appellant also has not shown[6] that he is "similarly

---

[5] Rather, he argues that the denial of his permit application was unconstitutionally arbitrary because it was not justified by considerations of the conditional use criteria or other zoning standards. However, the decision of the ZBA that the proposal does not fall within a conditional use category has already been litigated in Docket No. 226-12-04 Vtec. All that is before the court in the present case is whether one or more flights to and from the property using the airstrip should be approved as accessory to the storage use of the hangar building.

[6] Although Appellant's memorandum at page 4 requests "the scheduling of an evidentiary hearing on the issue of similarity," even though the parties had earlier agreed that no facts were in dispute, Appellant has not come forward with any material facts that are disputed on this issue. Under Rule 56(e), the party opposing summary judgment "has the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." Endres v. Endres, 2008 VT 124, ¶ 10 (citing Boulton v. CLD Consulting Eng'rs, Inc., 2003 VT 72, ¶ 5, 175 Vt. 413). Appellant has not submitted evidence rebutting the Town's evidence showing the dissimilarities between the Valois property and the Spencer property; therefore, Appellant has not met his burden of persuading the Court that there is a triable issue of fact. See Boulton, 2003 VT 72, ¶ 5 (citing Ross v. Times Mirror, Inc., 164 Vt. 13, 18

7

situated" to Mr. Spencer. The Spencer airstrip is 2000 feet long and 50 feet wide, and is located on a 43-acre non-residential property, well away from Route 22A. It has received VTrans approval. As the Zoning Administrator's initial approval of the Spencer airstrip in 1992 was not appealed, the Court cannot now determine whether the Zoning Administrator applied the zoning ordinance properly in that instance, and therefore cannot determine whether current differential treatment is improperly selective, or simply represents a currently correct interpretation of the zoning ordinance. See, e.g., In re Curry Variance Application, No. 222-10-07 Vtec, slip op. at 10 (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.) (declining to find selective treatment where the Court cannot determine whether the zoning ordinance was properly applied in past instances); In re Edgar Northshore Drive Variance Application, No. 292-12-07 Vtec, slip op. at 9 (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.) (same).

The administration of zoning in many of Vermont's towns is performed largely by volunteer board members and part-time zoning administrators. The system recognizes that mistakes will be made. Letourneau, 168 Vt. at 550. The statute is set up to deal with such errors. A landowner who has obtained a permit issued in error by a zoning administrator is entitled to keep that permit, but the permitted use, structure, or lot remains a nonconformity whose expansion is strictly regulated by the zoning ordinance. 24 V.S.A. §§ 4303(13)–(16), 4412(7).

All that was before the Court in this present case was what was left open in Docket No. 7-1-06 Vtec: whether a single flight in and out annually, to put the aircraft into storage and remove it from storage, or some other small number of flights for that purpose, should be approved[7] as accessory to the intended storage use of the airplane

---

(1995)). In any event, because the Court finds that Appellant has not met the second prong of the Letourneau test, a hearing is not required on the issue of similarity.

[7] With suitable conditions, such as ones related to VTrans approval of the safety of such use, or related to prior notification to specified neighbors.

hanger.  Although that was his application, and could have been ruled on <u>de novo</u> by this Court in this case, Mr. Valois has essentially foregone that application by declining to propose a limited number of flights and instead requesting again the ten round-trip flights per year that had already been ruled on in Docket 7-1-06 Vtec.

Neither the selective treatment doctrine nor the doctrine of equitable estoppel requires a municipality to give subsequent applicants, even ones who can show that they are similarly situated, the benefit of a possibly erroneous unappealed decision issued by a zoning administrator in 1992, or by a ZBA in 1997, without a showing of improper motive or bad intent for the selective treatment.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town's Motion for Summary Judgment on Question 5 is GRANTED and that Appellant's Motion for Summary Judgment on Question 5 is DENIED, concluding this appeal.

Done at Berlin, Vermont, this 14th day of July, 2009.

_____
Merideth Wright
Environmental Judge