STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re O'Neil Sand & Gravel | } | |
| Act 250 Amendment Application | } | Docket No. 48-2-07 Vtec |
| (Appeal of O'Neil Sand & Gravel, LLC) | } | |
|  | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicant O'Neil Sand & Gravel, LLC appealed from a decision of the District 2 Environmental Commission, denying Appellant-Applicant's application for an amendment to an Act 250 permit for an aggregate extraction project in the Town of Chester.  Appellant-Applicant (Applicant) is represented by Lawrence G. Slason, Esq.; Cross-Appellants (Neighbors) Janet Colbert, Melanie McGuirk, Helen McGuirk, Alice Forlie, Hans Forlie, Heather Chase, Bruce Chase, Jonathan Otto, Carrol Otto, Rachel Root, Valerie Kratky, and John Kratky are represented by David L. Grayck, Esq.; and Intervenor Green Mountain Union High School (GMUHS) is represented by Geoffrey H. Hand, Esq.  The Town is represented by James F. Carroll, Esq.; Interested Party Paul B. Dexter, Esq. has appeared and represents himself. Applicant, Neighbors, and GMUHS have each moved for summary judgment.  The following facts are undisputed unless otherwise noted.

In May 2001, Ralph J. Michael of the Michael Engineering Company submitted an application (the 2001 application) on behalf of Michael and Amy O'Neil, Bruce R. Parker In Trust, and JCJ Properties, Inc. for an Act 250 permit for a sand and gravel extraction operation located on a 139-acre parcel on the southwest side of Route 103 in the Town of Chester.  The 139-acre parcel was part of a 232-acre property owned by the

1

Bruce R. Parker Trust, et al.; Michael and Amy O'Neil entered into a contract to purchase the 139-acre parcel pending receipt of all necessary state and local permits.

Because the property is not directly adjacent to Route 103, the conveyance also included a right-of-way over property owned by JCJ Properties, Inc., which provides access from Route 103 to the 139-acre parcel. The 139-acre parcel is bordered on its northwest side by Green Mountain Union High School and on its northeast side by the Putney Pasta Company. Residential properties adjoin the 139-acre parcel on the northwest, southwest, and south sides. There are also nearby residences on the northeast side of Route 103, across from the 139-acre parcel.

The 232-acre property owned by Bruce R. Parker (in trust) was subject to Act 250 permit #2S0214 and subsequent amendments. The 2001 application cover sheet indicated that the 2001 application was for a "new project," but notes that there were prior permits in the "2S0214 series" associated with the property. There is at least one other gravel extraction operation on the 232-acre property, located about one-quarter mile south, permitted by Land Use Permit #2S0214 in 1974. It is unclear if this gravel extraction project is completed or still operating.

The 2001 application proposed to conduct the sand and gravel extraction operation on an 18-acre project site (the 2001 18-acre project site), located in the most northerly corner of the 139-acre parcel, near the boundary shared with GMUHS. GMUHS owns approximately 162 acres adjacent to the 139-acre parcel. There is a forested area containing a network of trails on GMUHS property between the school building and the shared boundary, including a trail that runs along the property line. This trail network is used for educational and recreational purposes by GMUHS, and it is used for recreational purposes by the public. Although the 18-acre project site was proposed to be located approximately 550 feet from the school building itself, the excavation was proposed to extend to the boundary of GMUHS's property. The nearest residences are located approximately 900 feet from the 18-acre project site.

2

The application cover sheet described the project as "a gravel extraction operation on an 18[-]acre portion of 139 acres to be purchased from the Bruce R. Parker, In Trust land. Construct 800 feet of access road over [property] of JCJ Properties, Inc. Estimated 300,000 cubic yards of sand and gravel to be extracted." The application cover sheet indicated that the "[t]otal acres owned or controlled by applicant and landowner at the project site" was 231 acres, and that the number of "[a]cres committed to this project" was 139 acres. The proposed construction duration was 1 year and the proposed duration of the permit was 6 years.

The District 2 Environmental Commission (Commission or District Commission) approved the proposed project in October 2001. In its written decision on the application, the Commission described the project as "a sand and gravel extraction operation and construction of 800 feet of access road over property of JCJ Properties, Inc." The written decision noted that the "tract of land consists of 232 acres," and that Michael and Amy O'Neil had contracted to purchase 139 acres of the larger 232-acre property. The written decision refers to the 18-acre project site several times, mostly in reference to the logging that would be necessary. Applicant's Ex. 1B[1] at 4, 8, 10–12. In finding number 11, the written decision describes the 18-acre project site as "the proposed excavation and operations area." Id. at 4.

In the 2001 permit itself, the terms "site," "premises," "extraction area," "excavation area," "tract," and "land" are used without any definition or indication of whether these terms are intended to refer to specific portions of the 139-acre parcel or the 232-acre property. In the 2001 permit, the only reference to the 18-acre project site as separate and distinct from the 139-acre parcel or the 232-acre property is in Condition

---

[1] Applicant's Exhibit 1 contains the 2001 permit and the Commission's written decision on the permit application. For ease of referring to these documents separately, in this decision the Court will refer to the 2001 permit as Applicant's Exhibit 1A and the written decision as Applicant's Exhibit 1B.

3

28, which states, "Any proposals for logging on the tract of land, other than the 18 acres which will be logged for extraction, shall be submitted for review and approval by the District Environmental Commission and the District Wildlife Biologist. . . ." Applicant's Ex. 1B at 4. The 2001 permit imposes conditions on areas of the 139-acre parcel outside of the 18-acre project site, such as Condition 29, which requires the permittees to "permanently protect 28.8 acres of deer wintering area" to mitigate loss of deer wintering area at the 18-acre project site. Id.

The 2001 permit does not contain conditions explicitly restricting future use or development of the 139-acre parcel other than the protected 28.8 acres of deer wintering area. Future development of the property appears to have been anticipated, as Condition 28 allows the protected deer wintering area to be relocated "in conjunction with future permit amendments." Id. Condition 42 requires written approval of the District Commission for "further subdivision or alterations to the land." Id. at 6. The Commission's written decision, in Finding No. 57, states, "The future use of the reclaimed area will be a forested area with possibly two to three homes." Applicant's Ex. 1B at 14.

The Commission's approval of the 2001 application was subject to numerous conditions; the conditions relevant to the present appeal are Conditions 11, 12, 21, and 46. Conditions 11 and 12 imposed restrictions on the amount of noise generated "from all aspects of operation occurring on the site" in order to protect adjacent land uses. Condition 21 stated, "There shall be no blasting. . . ." Blasting had not been proposed in the 2001 application. Condition 46 required all extraction to be completed within 6 years of commencement, and set a deadline of October 1, 2009 for reclamation.

The 2001 permit was not appealed and became final. Applicant completed the extraction operation in conformance with the 2001 permit, except that reclamation of the site has not yet been completed and the deadline for reclamation has not passed.

4

On May 24, 2006, Applicant submitted an application for amendment of the 2001 permit, seeking authorization of a new project that would "extract gravel, stone, and bedrock and process construction aggregate" on a 15-acre project site located elsewhere on Applicant's 139-acre parcel. Applicant's Ex. 6 at 1. The application states, "Total acres owned or controlled by applicant and landowner at project site[:] 139," and, "Acres committed to this project[:] 15." Id.

The proposed 15-acre project site is separate and distinct from the 2001 18-acre project site approved by the 2001 permit, although Applicant proposes to use the same access road, and to use utilize a portion of the 2001 18-acre project site for stockpiling and loading materials. The proposed 15-acre project site is located approximately 200 feet southwest of the 2001 18-acre project site, approximately 1,400 feet from the school building. The nearest residences are located along Route 103 approximately 1,700 feet from the 15-acre project site. The project is proposed to operate seasonally, between April 15 and December 15. The proposed construction duration period is 10 years; the proposed permit duration period is 15 years.

Depending upon the scope of the 2001 permit, amendment of some of the conditions imposed by that permit may be necessary for the newly proposed operation. The parties do not dispute that amendment of Condition 46 is necessary, as the portion of the 2001 project site proposed to be utilized by the proposed operation would not be reclaimed by the October 1, 2009 deadline. Because of the presence of ledge and bedrock at the proposed project site, blasting is necessary for the proposed operation; therefore, amendment of Condition 21, which prohibits blasting, is necessary if Condition 21 applies to operations on the entire 139-acre parcel (as opposed to only the 2001 18-acre project site). Amendment of Conditions 11 and 12 may also be necessary if the proposed operation would violate the noise limitations contained in those Conditions, and if those Conditions apply to operations on the entire 139-acre parcel.

The District Commission denied the application for amendment of the 2001 permit on February 2, 2007, and this appeal followed.

Whether Conditions 11, 12, and 21 apply to 139-acre parcel or only to the 2001 18-acre project site

Applicants argue that Conditions 11, 12, and 21 do not need to be amended because they only apply to the 2001 18-acre project site (and associated infrastructure) and not to all future operations in other locations on the 139-acre parcel.

Conditions 11 and 12 both impose noise limitations on "all aspects of the operation occurring on the site." Condition 11 requires that noise "shall not exceed" certain levels "at the property line" and "outside any residence or areas on the residential property which receive frequent human use." Condition 12 requires that noise "shall not exceed" certain levels "at the school buildings and areas used for outdoor recreation and education."

It is clear from the plain language of these conditions that they are meant to apply to the entire 139-acre parcel, not just the 2001 18-acre project site. See Agency of Natural Resources v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573 (mem.) (explaining that permit conditions are interpreted according to rules of statutory construction, which direct courts to first look to the plain language of the provision at issue). Both conditions impose noise limitations that extend beyond the 2001 18-acre project site and even beyond the 139-acre parcel. Because Conditions 11 and 12 impose requirements outside of the 2001 18-acre project site, it is clear that the District Commission intended for these conditions to apply to all operations on the 139-acre parcel, not only to the 2001 18-acre project site. See id. (explaining that courts' primary goal in interpreting permit conditions is implementing the drafters' intent).

On the other hand, the 2001 permit and the Commission's written decision are ambiguous as to whether Condition 21 was intended to apply to the entire 139-acre

6

parcel or whether it is only applicable to the project then proposed for the 2001 18-acre project site. The project proposed in 2001 did not request or propose blasting, and the application merely indicated that no blasting was proposed. Condition 21 simply carried this attribute of the application forward to state: "There shall be no blasting. . . ." The condition does not refer to any physical area, time frame, or project. The plain language of Condition 21 provides no guidance in determining the drafters' intent as to the scope of this permit condition. See id.

As the Vermont Supreme Court has stated, "because land-use regulations are in derogation of property rights, any uncertainty in their meaning must be resolved in favor of the property owner.'" See id., quoted in In re Eustance Act 250 Jurisdictional Opinion, 2009 VT 16, ¶ 41 (Reiber, C.J., dissenting); Sec'y, Agency of Natural Res. v. Handy Family Enters., 163 Vt. 476, 481–82 (1995) (quoting In re Vitale, 151 Vt. 580, 584 (1989)). Furthermore, permit conditions must be sufficiently clear to provide notice of the restrictions placed on the land. Handy Family Enters., 163 Vt. at 482 (quoting In re Farrell and Desautels, Inc., 135 Vt. 614, 617 (1978)). The Commission's written decision and the 2001 permit contains almost no discussion of blasting, as blasting was not proposed and its effects were therefore not at issue. Because Condition 21 is ambiguous as to its scope, and because Applicants therefore were not provided with sufficient notice for this Condition to limit future operations on the entire parcel, Condition 21 applies only to the project that was at issue in the application then proposed for the 2001 18-acre project site.

However, when the merits of the present application are addressed, it will be the Applicant's burden to establish that all aspects of the new proposed project, including the proposed blasting activities, comply with the Act 250 criteria contained in 10 V.S.A. § 6086(a). It is within the Court's authority regarding this application to impose conditions regarding blasting, including to determine that a condition prohibiting blasting for the newly proposed project is appropriate, depending on the evidence

presented by the parties as to whether such a condition is necessary to meet the Act 250 criteria.

In addressing the issue of whether the Conditions at issue apply to the entire 139-acre parcel, Applicants, Neighbors, and GMUHS each make arguments relating to the former Environmental Board's holding in In re Stonybrook Condominium Owners Association, Decl. Ruling #385, Findings of Fact, Concl. of Law, & Order, at 9–20 (Vt. Envtl. Bd. May 18, 2001).[2] In Stonybrook, property owners sought to raze a farmhouse and barn on property subject to Act 250 jurisdiction based on a condominium development. Id. at 1. The issue in the appeal was whether the proposed demolition required an amendment to the permit covering the property under Act 250 Rule 34(A), which states that an amendment is necessary for "any material or substantial change in a permitted project, or any administrative change in the terms and conditions of a land use permit." See id. at 2. The property owners argued that no permit amendment was required for the proposed demolition because the farmhouse and barn, and the otherwise open land on which they were located, were not within the scope of the "permitted project" within the meaning of Rule 34(A).

The Environmental Board determined that activity concerning the farmhouse and barn was within the scope of the permitted project. Id. at 18. In reaching this holding, the Board found that the default definition of "permitted project," as that term is used in Rule 34(A), is the entire tract of land on which construction occurs. Id. at 14–15. The Board found that this would the "best and most workable definition" of permitted project for two reasons: "First, a bright line test, one that establishes a 'permitted project' by the physical metes and bounds of a project tract, informs the world – the District Commission, the permittee, and all other interested persons – as to

---

[2] Under 10 V.S.A. § 8504(m), this Court is directed to give precedent from the former Environmental Board "the same weight and consideration as prior decisions" of this Court.

the lands that will be subject to scrutiny when further activities occur." Id. at 15. Second, the Board concluded that this bright line test would make it more difficult for potential applicants to avoid the permitting process by segmenting a development using artificial development boundaries. Id. at 17.

However, in order to avoid inequitable or absurd results, the Board concluded that this bright line test could be modified in some circumstances by a "nexus" approach to defining "permitted project." Id. at 17–18. Under this approach, the permittee would bear the burden of proving the "extent of the project and its impacts" in order to limit the boundaries of the permitted project. Id. at 18.

> The Board recognizes that delineating such boundaries will require a careful evaluation by the Coordinator for the District Commission of the natural resources on the project tract and of the actual impacts or effects created by the project on those resources. It may also require the permittee to present to the Coordinator a survey and other evidence which accurately establish the extent of such impacts or effects.

Id. Therefore, under Stonybrook, the "permitted project" for purposes of Rule 34 is the entire tract of land on which the project occurs, unless the permittee proves that the extent and the impacts of the project are limited, such that the boundaries of the permitted project should be limited.

Neighbors and GMUHS argue that under Stonybrook, all of the conditions in the 2001 permit apply to the entire 139-acre parcel, as Applicants did not seek to limit the boundaries of the project in their 2001 application. It is true that under Stonybrook, the 2001 permit applies to the entire 139-acre parcel, and during the pendency of the permit any future development on that parcel will require an amendment to the existing permit. However, the fact that the permit applies to the entire parcel does not mean that every condition within the permit applies to the entire parcel. In fact, it is clear that some of the conditions, such as Condition 29, only apply to portions of the 139-acre parcel.

9

In response to Neighbors' and GMUHS' argument regarding <u>Stonybrook</u>, Applicants have asked the Court to overrule <u>Stonybrook</u> and adopt a default definition limiting the "permitted project" to the area on which actual development occurs for purposes of Rule 34(A). This approach was specifically rejected by the Environmental Board, which concluded that "this approach construes the concept of a 'permitted project' too narrowly, as it presents a definition which could be inconsistent with the scope and extent of a permit which is issued for such a project." <u>Id</u>. at 11. Since the impacts of a development are often felt outside the construction footprint, permit conditions are frequently imposed on portions of the property outside the construction footprint. The Board's concern was that consideration of activities that impact those conditions, but were proposed to occur outside the construction footprint, would be prevented by defining "permitted project" in this manner. <u>Id</u>. The Environmental Board's reasoning regarding this issue was sound and this Court declines to disturb the rule established in <u>Stonybrook</u>.

<u>Legal Standard for Amendment of Act 250 Permits</u>

As previously discussed, Rule 34 of the Act 250 Rules governs the review of applications for amendments to Act 250 permits.[3] Subsection (A) of Rule 34 states that an amendment is required for "any material or substantial change in a permitted project, or any administrative change in the terms and conditions of a land use permit." Act 250 Rule 2(G) defines "substantial change" as "any change in a development or subdivision which may result in significant impact with respect to any of the criteria specified in 10 V.S.A. Section 6086(a)(1) through (a)(10)." The parties do not dispute that the 2006 application proposes a change that may result in a significant impact to the Act 250 criteria.

---

[3] The Act 250 Rules effective January 12, 2004 are applicable to this appeal, and are available at http://www.nrb.state.vt.us/lup/publications/rules/2004rules.pdf.

Subsection (E) of Rule 34 provides standards for reviewing applications for amendments, laying out a test to determine if amendment is appropriate in any particular instance. The first step is to determine whether the applicant seeks to amend permit conditions "which were included to resolve issues critical" to the issuance of the permit. If the conditions sought to be amended were not critical, no further analysis is required under Rule 34(E). See, e.g., In re Mountainside Props., Inc. Land Use Permit Amendment, No. 117-6-05 Vtec, slip op. at 8–9 (Vt. Envtl. Ct. Dec. 13, 2005) (Durkin, J.).

If the conditions sought to be amended were critical to the issuance of the original permit, the next step in the Rule 34(E) analysis is to "consider whether the permittee is merely seeking to relitigate the permit condition." As the Environmental Board explained, "[s]ubsection two of [Rule] 34(E) is designed to codify the Vermont Supreme Court's observation that the initial permitting process should not be 'merely a prologue to continued applications for permit amendments.'" In re Dr. Anthony Lapinsky & Dr. Colleen Smith, Permit #5L1018-4/#5L0426-9-EB, Findings of Fact, Concl. of Law, & Order, at 18 (Vt. Envtl. Bd. Oct. 3, 2003) (quoting In re Stowe Club Highlands, 166 Vt. 33, 39 (1996)). Rule 34(E)(2) therefore requires the Court to determine whether the applicant is seeking to undermine the permit's purpose and intent, or whether there are circumstances or some intervening factor that justify an amendment. Id. (citing In re Dept. of Forests & Parks, Knight Point State Park, Decl. Ruling #77, at 3 (Vt. Envtl. Bd. Sept. 6, 1976)).

The final step in the Rule 34(E) analysis is to weigh "need for flexibility arising from changes or policy considerations" against "the need for finality in the permitting process." In balancing these needs, the following factors should be considered:

  (a) changes in facts, law or regulations beyond the permittee's control;
  (b) changes in technology, construction, or operations which drive the need for the amendment;

11

(c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;

(d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans;

(e) manifest error on the part of the district commission or the board in the issuance of the permit condition;

(f) the degree of reliance by the district commission, the board, or parties on prior permit conditions or material representations of the applicant in prior proceeding(s).

Rule 34(E)(3). If the need for finality outweighs the need for flexibility, amendment of the permit conditions is not proper.

If applying for the proposed amendment is allowable under the Rule 34 analysis, the reviewing body will proceed to address the merits of the amendment application and will determine whether the proposed project meets the requirements of the Act 250 criteria found in 10 V.S.A. § 6086(a).

Rule 34 Analysis

Condition 11

Condition 11 states in full: "In order to protect adjacent residences, noise levels from all aspects of operation occurring on the site shall not exceed 70dB(A) Lmax at the property line and 55 dB(A) Lmax outside any residence or areas on the residential property which receive frequent human use."

Applicant does not dispute that this Condition was critical to issuance of the 2001 permit; it is clear from the District Commission's written decision that this Condition was critical to positive findings under Criterion 1 (air pollution) and Criterion 8 (aesthetics).

In the present application for a permit amendment, Applicant has not presented evidence of any circumstances or intervening factors that justify amendment of

12

Condition 11. The fact that bedrock was not present in the extraction site approved in 2001, but is present in the newly-proposed extraction site, does not justify amendment of Condition 11. The possible presence of bedrock at potential future extraction sites was information that was available to Applicant at the time of the 2001 application. Cf. In re Judge Dev. Corp. & SW Corner, LLC Act 250 Permit, No. 189-9-05 Vtec, slip op. at 8–9 (Vt. Envtl. Ct. Aug. 7, 2006) (Wright, J.) (noting that applicants for an amendment to an Act 250 permit condition were not relying on information that was available to them at the time the condition was imposed).

Furthermore, as to Condition 11, the need for finality outweighs the need for flexibility. In terms of the need for flexibility, there have been no "changes in fact, law or regulations beyond the permittee's control." There was no error on the part of the Commission in issuing the 2001 permit, and no alternative or innovative designs to mitigate the noise impacts at issue have been presented. As to finality, Neighbors and GMUHS have presented evidence indicating that they relied on Condition 11 in deciding not to appeal the 2001 permit.

Accordingly, because Condition 11 was critical to issuance of the 2001 permit, because Applicants are attempting to relitigate the condition and thereby undermine its purpose and intent, and because the need for finality as to this Condition outweighs the need for flexibility, Rule 34(E) bars amendment of Condition 11.

Applicant also argues that the proposed operation will comply with Condition 11, and amendment of this Condition is therefore not necessary, making the Rule 34 analysis inapplicable. Applicant's argument rests on the assumption that Condition 11 does not apply to blasting noise, but rather, that it only applies to other operational noise. Applicant does not dispute that amendment of this condition is required if it applies to blasting noise.

Applicant argues that the A-weighted (dB(A)) scale, used to create noise limits in Condition 11, is not typically used to measure blasting noise, and that this Condition

13

therefore was not intended to apply to blasting. Applicant also notes that no blasting was proposed in the 2001 application, so this Condition could not have been drafted with the intent to limit blasting noise. Neighbors and GMUHS argue that Condition 11 does apply to blasting noise, and that Applicant cannot meet Condition 11 even if it does not apply to blasting noise.

As material facts are in dispute as to whether Applicant can meet Condition 11 without amendment, and as to whether Condition 11 applies to blasting noise, the Court cannot grant summary judgment on these issues. See V.R.C.P. 56(c)(3).


Condition 12

Condition 12 states in full: "In order to protect the public investment in Green Mountain Union High School, noise levels from all aspects of operations occurring on the site shall be no louder than barely audible at the school buildings and areas used for outdoor recreation and education." The phrase "barely audible" was further defined by the Commission as "noise which is no louder than the lowest background level noise which presently occurs when students are in classes." Applicant's Ex. 1B at 16.

Applicant argues that the proposed operation will comply with Condition 12, and amendment of this Condition is therefore not necessary, making the Rule 34 analysis inapplicable. Applicant's argument rests on the assumption that the noise limitation does not apply to the trail network (especially the trail that runs along a portion of the boundary with GMUHS and is closest to the 15-acre project site). The plain language of Condition 12 contradicts this assumption, as the noise limitations must be met "at the school buildings and areas used for outdoor recreation and education" (emphasis added). The trail network, including the trail closest to the proposed 15-acre project site, is used for outdoor recreation and education; therefore the noise limitation in Condition 12 must be met on the trail network, as well as at the school building and recreation fields.

14

Applicant also argues that Condition 12 does not apply to the trail closest to the proposed project site because that trail did not exist at the time of issuance of the 2001 permit. The Court need not address whether this Condition would apply to a new trail, because GMUHS has presented credible evidence that the trail did exist at the time the 2001 permit issued. Applicant has not presented evidence that controverts GMUHS's evidence. See V.R.C.P. 56(e); Endres v. Endres, 2008 VT 124, ¶ 10 (explaining that under V.R.C.P. 56(e), a party "has the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence" of the opposing party).

As Condition 12 does, by its plain language, apply to the GMUHS trail network, amendment of this Condition pursuant to Rule 34(E) may be required.

Applicant does not dispute that this Condition was critical to issuance of the 2001 permit; it is clear from the District Commission's written decision on the application that these conditions were critical to positive findings under Criterion 1 (air pollution), Criterion 8 (aesthetics), and Criterion 9(K) (public investments).

Applicant has not presented evidence of any circumstances or intervening factors that justify amendment of Condition 12. For the reasons stated above in the discussion of Condition 11, the presence of bedrock in the newly-proposed extraction site is not a circumstance that justifies amendment.

The need for finality as to Condition 12 also outweighs the need for flexibility, for the same reasons discussed above in relation to amendment of Condition 11. Accordingly, Rule 34(E) bars amendment of Condition 12.

However, Applicant also argues that Condition 12 does not need to be amended because it does not apply to blasting noise, like Condition 11. As there are material facts in dispute as to whether Condition 12 needs to be amended for the proposed operation, and whether it applies to blasting noise, summary judgment cannot be granted on these issues at this time. See V.R.C.P. 56(c)(3).

<u>Condition 46</u>

Condition 46 addressed the duration of the operation and subsequent reclamation of the 2001 18-acre project site, stating: "All extraction and removal of the materials shall be completed within six years of commencement of extraction activities. All reclamation shall be completed in accordance with the approved plans by October 1, 2009, unless an extension of this date is approved in writing by the District 2 Environmental Commission."

Applicant does not dispute that this Condition was critical to issuance of the 2001 permit; it is clear from the District Commission's written decision on the application that these conditions were critical to positive findings under Criterion 8 (aesthetics), Criterion 9(D) (earth resources), and Criterion 9(E) (extraction of earth resources).

Unlike Conditions 11 and 12, Applicant does not seek to relitigate Condition 46 and undermine its purpose and intent. A majority of the area to be reclaimed, approximately 85%, will be reclaimed in accordance with the approved plan by the October 2009 deadline. The portion that will not be reclaimed will not be visible from surrounding properties. As to Condition 46, there is an intervening factor that justifies amendment: the possibility of using a portion of the area to be reclaimed for the newly-proposed project, which will minimize the impacts of that project by utilizing an area that has already been disturbed.

The need for flexibility as to Condition 46 outweighs the need for finality. Applicant has presented an alternative design that allows reuse of the existing access road and a portion of the existing reclamation area, which will minimize the impacts of the newly proposed project. Although GMUHS and Neighbors assert that they relied on this Condition's requirement that extraction operations would be completed within six years, this reliance was misplaced. The 2001 permit does not prohibit future development, including mineral extraction operations, on all portions of the 139-acre parcel.

16

Accordingly, even though Condition 46 was critical to issuance of the 2001 permit, because Applicants are not attempting to relitigate the condition and thereby undermine its purpose and intent, and because the need for flexibility as to this Condition outweighs the need for finality, Rule 34(E) does not bar Applicant's application to amend Condition 46.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that all three Motions for Summary Judgment are GRANTED in part and DENIED in part, as discussed above. A telephone conference has been scheduled (see enclosed notice).

Done at Berlin, Vermont, this 11th day of September, 2009.

_____
Merideth Wright
Environmental Judge