135 So.2d 763 (1961)
Wilma WILLIAMS, a widow, Appellant,
v.
JOSEPH L. ROZIER MACHINERY CO., a Florida corporation, Appellee.
No. 2364.
District Court of Appeal of Florida. Second District.
December 8, 1961.
Rehearing Denied January 3, 1962.
Charles L. Steinberg, of Fishback, Williams, Davis & Dominick, Orlando, for appellant.
Richard W. Bates, of McCarty & Bates, Orlando, for appellee.
WHITE, Judge.
This is an appeal by Wilma Williams, plaintiff below, from a summary judgment entered for the defendant, Joseph L. Rozier Machinery Company. The plaintiff is the surviving wife of Kenneth Williams who was killed on July 2, 1959 in the course of his employment as a mechanic working on a caterpillar tractor. The ostensible cause of the tragedy was the excessive release of pressure from a valve forming a part of the mechanism of the tractor. The deceased's employer, C.A. Meyers Construction Company, had purchased the tractor from the defendant, Joseph L. Rozier Machinery Company.
The plaintiff's action, premised on negligence, was brought against both the manufacturer, the Caterpillar Tractor Company, and the retailer, Joseph L. Rozier Machinery Company. The trial court entered summary judgment for the latter defendant and the case continued against the manufacturer for damages deriving from *764 an alleged latent defect in the design of the pressure release valve that purportedly caused the death of plaintiff's decedent. It is from the summary judgment in favor of the defendant retailer, Joseph L. Rozier Machinery Company, that the plaintiff has taken this appeal.
The plaintiff contends that the defendant Joseph L. Rozier Machinery Company, as retailer, was negligent in selling to her decedent's employer a tractor with a defective part, to-wit: a defective pressure release valve, that such defect rendered the tractor inherently dangerous and that no warning had been given to the decedent of the dangerous condition. The plaintiff further alleged that the defendant had undertaken to repair the tractor after the sale and knew or should have known of the defect.
At the time of the accident the decedent was letting off pressure from a hydraulic tread adjuster. Affixed to the cylinder was a sign approximately 2 x 4 inches in size reading:
"Warning: High pressure cylinder. Do not open vent valve more than one-half turn or remove fitting until pressure is relieved."
Coworkers of the deceased heard the explosive-like noise caused by the propulsion of a grease fitting from the cylinder as it apparently struck the decedent on the head and caused his immediate death. The accident itself was not seen by any of the coworkers of the deceased, nor did they observe the method used by the deceased in releasing the pressure.
The plaintiff contends that the summary judgment was erroneous in that there were genuine issues of material fact as to whether or not the warning sign conveyed adequate notice of the lethal potential of the pressure release system and as to whether or not the employees of the defendant had exercised due care in the inspection of the system in view of the accumulation of grease deposits obscuring the warning plate. It was urged on behalf of the plaintiff that the defendant's employees should have remedied the alleged dangerous condition of the valve when they inspected the track adjustment system.
The plaintiff relies on Russell v. Jacksonville Gas Corporation, 1960 Fla.App., 117 So.2d 29, 32. In that case plaintiff purchased a gas range from the defendant, and shortly thereafter the defendant undertook to repair a control knob. After the repair the purchaser lit the oven and was injured by an explosion caused by a gas leakage due to a defective thermostat.
The First District Court of Appeal said:
"In the case at bar, defendant gas corporation undertook to sell, install, and repair a gas range. Whether it exercised due care in repairing the control knob without investigating the thermostat which was a part of this control mechanism was a question for the jury. Whether the gas company, in the proper discharge of such duty, would or should have detected the defective thermostat and repaired it, thereby obviating the ensuing explosion, was likewise a jury question. Under these circumstances, it is a question of fact as to whether one who sells, installs and repairs a gas range has exercised due care in repairing an appliance capable of violent malfunctions. Our Supreme Court has early recognized that the use of a dangerous agency requires the exercise of care commensurate with the nature and uses of the agency and the conditions and circumstances under which it is operated and utilized." (Emphasis added.)
It is notable in the instant case that the tractor was inspected by the defendant seller's employees before its delivery to the purchaser. The affidavit of S.H. Lang stated that the tractor was in proper working order at the time it was delivered on April 15, 1959. The tractor was then used by the purchaser until July 1, 1959 when it was removed to the purchaser's shop for *765 repairs. S.H. Lang further stated that at the time of the sale and delivery of the tractor he explained the proper methods of adjustment to several of the purchaser's employees and, on June 5, 1959, re-inspected the tractor in the purchaser's shop and adjusted the tracks. He further stated that he also turned the pressure release valve one-half turn on each side of the tractor and that both pressure valves were "operating properly at that time * * *".
There appears no indication from the summary proceedings that the defendant, Joseph L. Rozier Machinery Company, had actual or constructive knowledge of any defect in the value in question; nor did it appear that the said defendant ever undertook to repair the valve, or was under an existing or continuing duty to maintain the tractor in question. This case is therefore distinguishable from the Russell case, supra.
In his deposition Herbert Thompson, the defendant's maintenance man, said that he was sent out some time in May or June, 1959 to find out why the tracks did not adjust. He stated:
"I got out there and found the tracks were loose. They said they pumped grease into the hydraulic adjustor and nothing happened. I put the grease gun on there and it didn't pump, so I opened up the release fitting and let out a good handful of grease, pumped back about the same and it stopped. When I saw that happen I took the cover off the roller frame which covers the track adjustor and then I could see the ram on the hydraulic adjustor was touching the cross-member and couldn't go any further. That brought my attention to the pins and bushings which had extreme internal wear. I showed the job foreman there and he admitted that the tractor had over 500 hours service on that job in wet sand which would compensate for it, so I went back to the shop. Before I got back there I called on the radio and another boss from C.A. Meyer was going to be there and wanted to know why it was worn. I turned around and went back to the job and found Glen Chase and Bob Almquist and Mr. Wickham. We explained to him how the pins and bushings were worn internally. He couldn't understand it, due to the fact that the bushings on the outside weren't too badly worn, so he left it at that and said he'd let us know, didn't know what he was going to do. That's the last I heard of it."
The pins and bushings were worn and the tractor accordingly was removed to the purchaser's shop. The pressure had to be released to accomplish such repairs,  and it was this operation which the deceased apparently was undertaking for his employer, the purchaser, when the unfortunate accident occurred.
We have previously noted that the plaintiff's case is premised on negligence. In Carter v. Hector Supply Co., 1961 Fla., 128 So.2d 390, 392, the court said that "a retailer could be held liable to a third party in a negligence action as contrasted to absolute liability under an implied warranty [Italics theirs] only if the retailer could be charged with actual or implied knowledge of the defect." (Emphasis ours.)
We deem it unnecessary to discuss plaintiff's point to the effect that the warning sign near the release valve was not adequate to convey reasonable warning to the deceased. Suffice it to say that there was no showing that the defendant, Joseph L. Rozier Machinery Company, had installed the said sign or was charged with the duty to install it.
In Rawls v. Ziegler et al., 1958 Fla., 107 So.2d 601, at 608, it was held that "* * * if it appears to the trial court that an asserted claim is without merit either in law or fact and nothing could be accomplished in submitting immaterial issues to a jury, then a summary judgment should be entered." The trial judge was correct in granting the summary judgment inasmuch *766 as there appeared no material issues of fact a determination of which would impose liability on the defendant, Joseph L. Rozier Machinery Company.
Affirmed.
ALLEN, Acting C.J., and KANNER, J., concur.