**2008 VT 124**

# Joan E. Endres v. Kevin J. Endres

[968 A.2d 336]

No. 07-395

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 19, 2008

64

*Kurt M. Hughes* of *Murdoch & Hughes*, Burlington, for Plaintiff-Appellant.

*John L. Pacht* and *Gregory A. Weimer* of *Hoff Curtis*, Burlington, for Defendant-Appellee.

¶ 1. **Dooley, J.** For the second time, we consider the suit of wife, Joan Endres, against her former husband, Kevin Endres, for negligent transmission of a sexually transmitted disease (STD). See *Endres v. Endres*, 2006 VT 108, 180 Vt. 640, 912 A.2d 975 (mem.) (affirming dismissal of wife's claims for battery and intentional inflection of emotional distress and reversing dismissal of negligence claim). Wife's suit alleges that, while they were married, husband negligently infected her with Human Papillomavirus (HPV). The superior court granted husband sum-

mary judgment, concluding that wife failed to demonstrate that husband breached a duty because wife provided no evidence that husband knew or should have known that he had HPV. On appeal, wife argues that there remain issues of material fact as to whether husband should have known he was infected. We affirm.

¶ 2. Wife and husband were married in 1972 in New York, and thereafter took up residence in Milton, Vermont. At some point during the course of the marriage, husband was involved in an extramarital relationship. In July 1999, during a routine pap smear, wife tested positive for HPV, a disease that is transmitted by skin-to-skin contact, including through sexual intercourse. Subsequently, wife was formally diagnosed with HPV, and later tested positive for types of HPV that cause cervical, vulvar, oral, sinus, and anal cancer.

¶ 3. In 2003, wife commenced suit, bringing claims for negligence, battery, and intentional infliction of emotional distress. In particular, with respect to the negligence claim, wife alleged that husband "knew that by engaging in an extramarital relationship he exposed himself to potential risk of becoming infected with an incurable infection which he could then transmit to [wife]" and that husband "had a duty to refrain from extramarital relationships and to protect [wife] from infection." Wife alleged that husband breached this duty when he engaged in extramarital sex and then took no steps to protect wife from infection.

¶ 4. Husband moved to dismiss under Vermont Rule of Civil Procedure 12(b)(6), arguing that wife failed to state a claim upon which relief could be granted. The superior court agreed and granted husband's motion, reasoning that "each and every case allowing for tort recovery for the transmission of sexually transmitted diseases has premised recovery on the defendant's actual or constructive knowledge of the disease." The court concluded that wife had failed to allege such knowledge, stressing that mere "[p]romiscuity or infidelity has never been held to support such an inference of knowledge."

¶ 5. On appeal, we affirmed the dismissal of wife's claims for battery and intentional infliction of emotional distress, stating that those claims required "an allegation that husband actually knew he was infected with HPV." *Endres*, 2006 VT 108, ¶ 6. We reversed the court's dismissal of wife's negligence claim. *Id.* ¶ 5. Although we acknowledged that wife had not yet set forth any facts demonstrating that husband owed her, or had breached, a legal

duty, we held that wife's assertion of negligence and related injury sufficed to survive a Rule 12(b)(6) motion. *Id.* ("[I]t is sufficient against a motion to dismiss to allege that defendant acted negligently and as a result plaintiff was injured." (quotation omitted)).

¶ 6. On remand, after discovery concluded, husband moved for summary judgment, arguing that wife had failed to raise an issue of material fact as to his actual or constructive knowledge of infection. Specifically, husband relied upon his affidavit that stated that he had never been diagnosed with or exhibited any symptoms of HPV. Further, he stated that he has no reason to believe that he has HPV and believes he does not have HPV. Based on the affidavit, husband argued that it was undisputed that he did not have actual or constructive knowledge that he had HPV and could transmit it to wife. He further contended that wife had failed to raise an issue of material fact as to causation, because she had not demonstrated that husband had given her HPV or even that she had acquired HPV through sexual contact.

¶ 7. In response, wife filed her own affidavit and one from a doctor. Her affidavit averred that husband had "at least one extra-marital relationship" and that "[a]s an apparent result of this relationship(s), [husband] infected [her] with . . . HPV." She stated that, prior to a pap smear in 1999, her tests were negative for HPV. She claimed that she had had no sexual partners other than husband so that "[t]here [was] no other possible source of [her] HPV infection than from [husband]." The affidavit of the physician explained, among other things, that: (1) seventy to eighty percent of women are infected with HPV at some time in their lives; (2) the number of sexual partners, or the number of sexual partners of a partner, increases the risk of infection; (3) there is no medical cure for HPV; and (4) there is no reliable method to determine HPV infection for men.

¶ 8. With respect to the element of causation, based on the information in the affidavits, wife responded that: (1) her medical records showed that she had not been diagnosed with an STD before 1999; (2) her records indicated that she was diagnosed with HPV in 1999; (3) pap testing would have produced evidence of HPV prior to 1999 had wife been infected; (4) wife was diagnosed with cervical HPV, which is transmissible through sexual contact; and (5) wife had sexual contact in the relevant period only with husband.

¶ 9. In assessing husband's motion for summary judgment, the trial court examined what duty husband owed to wife. Based on case law in other states, the court concluded that wife would have to show that husband knew or should have known that he had HPV to demonstrate that he breached a duty owed to wife. The court explained husband's knowledge in this case as follows:

> [Husband] claims he did not know he was a carrier, had no symptoms, and in fact has never been diagnosed as having HPV. [Wife], in turn, does not present any evidence that [husband] knew he was carrying this STD, or indeed, that he actually carried it. Indeed, [wife]'s expert states that there is no reliable method of diagnosing men with HPV until symptoms appear. [Wife] does not contest the fact that [husband] was asymptomatic, and offers no other proof suggesting he knew he was infected. Allegations alone cannot create triable issues of fact. Thus, the mere fact that [wife] contracted HPV does not constitute evidence that [husband] knew he had it.

(Citations omitted.) Without any evidence to demonstrate that husband knew or should have known he was infected, the court concluded that wife failed to demonstrate that husband breached a duty owed to her and granted husband summary judgment. Wife now appeals.

¶ 10. We review an award of summary judgment de novo, construing all doubts and inferences in favor of the nonmoving party. *In re Mayo Health Care, Inc.*, 2003 VT 69, ¶ 3, 175 Vt. 605, 830 A.2d 129 (mem.). The inquiry is familiar: whether there are any genuine issues of material fact and whether, in their absence, either party deserves judgment as a matter of law. *Id.*; see V.R.C.P. 56(c)(3). Under Rule 56(e), the nonmoving party has the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party. See *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 5, 175 Vt. 413, 834 A.2d 37.

¶ 11. To support her negligence claim, wife must show that husband owed her a legal duty, that he breached that duty, that the breach was the proximate cause of her injury, and that she suffered actual loss or damage. See *O'Connell v. Killington, Ltd.*, 164 Vt. 73, 76, 665 A.2d 39, 42 (1995) (listing elements of

common law negligence). Duty, the first element, is central to a negligence claim, and its existence is primarily a question of law. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 487, 622 A.2d 495, 499 (1993). Duty is " 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " *Id.* (quoting W. Prosser & W. Keeton, The Law of Torts § 53, at 358 (5th ed. 1984)). Although we have not addressed the question directly, courts have uniformly imposed on persons with communicable diseases a tort duty not to infect others. See *Berner v. Caldwell*, 543 So. 2d 686, 688 n.1 (Ala. 1989) (collecting cases), *overruled on other grounds by Ex parte General Motors Corp.*, 769 So. 2d 903 (Ala. 1999); see generally D. Mack, *Cleansing the System: A Fresh Approach to Liability for the Negligent or Fraudulent Transmission of Sexually Transmitted Diseases*, 30 U. Tol. L. Rev. 647 (1999). Such a duty extends to transmission of STDs. See *Berner*, 543 So. 2d at 689 n.2.

■ ¶ 12. This case primarily turns on what a plaintiff must demonstrate to show a breach of the duty not to infect others with an STD. The question is hardly a novel one, and our sister jurisdictions have been almost unanimous in their answer to it. In recognizing the duty not to transmit an STD to a sexual partner, courts require persons to exercise ordinary care to avoid transmission. To establish an actionable breach of that standard of care, the plaintiff must show that the defendant had actual or constructive knowledge that he or she was infected with the transmitted STD. See, e.g., *John B. v. Superior Court*, 137 P.3d 153, 160 (Cal. 2006) (collecting cases).

■ ¶ 13. This approach is in keeping with the general principles underlying common-law negligence. See *Largess v. Tatem*, 130 Vt. 271, 276, 291 A.2d 398, 401 (1972) (explaining that liability for negligence requires a plaintiff to demonstrate that a defendant had "knowledge or reasonably was chargeable with the knowledge that his act or omission involved danger to another"); see also Restatement (Second) of Torts § 289 cmt. b (1965) (stating that "[i]n order that an act may be negligent it is necessary that the actor should realize that it involves a risk of causing harm to some interest of another"). Whether a defendant is negligent depends on whether his or her action was objectively reasonable under the circumstances; that is, the question is whether "the actor either does foresee an unreasonable risk of injury, or could

have foreseen it if he conducted himself as a reasonably prudent person." *John B.*, 137 P.3d at 160 (citation omitted).

¶ 14. Our case law on negligence has regularly allowed plaintiffs to demonstrate a breach of duty by submitting evidence to show a defendant's actual or constructive knowledge. See, e.g., *Malaney v. Hannaford Bros. Co.*, 2004 VT 76, ¶ 8, 177 Vt. 123, 861 A.2d 1069 (announcing standard in slip-and-fall cases); *Vince v. Wilson*, 151 Vt. 425, 429, 561 A.2d 103, 105 (1989) (applying standard in negligent-entrustment cases); *Lane Constr. Corp. v. State*, 128 Vt. 421, 428, 265 A.2d 441, 445 (1970) ("Foresight of harm lies at the foundation of negligence. The opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself. Such knowledge may be implied, imputed and constructed from the circumstances."). We see no reason to depart from this standard in the case of STDs.

¶ 15. Demonstration of breach through constructive knowledge is important in the determination of liability for negligent transmission of STDs. A plaintiff will rarely be able to show that a defendant had actual knowledge of his or her infection. Moreover, if only those who have tested positively for an STD — and thus actually know that they are infected — are subject to suit, there may be "an incentive for some persons to avoid diagnosis and treatment in order to avoid knowledge of their own infection." *John B.*, 137 P.3d at 161 (quotation omitted). By contrast, using a constructive knowledge requirement holds responsible those who consciously avoid knowledge of infection even when suffering visible symptoms of a disease. See *Lane Constr. Corp.*, 128 Vt. at 428, 265 A.2d at 445 ("Knowledge of true facts may be essential to careful conduct, and where knowledge is required, voluntary ignorance is culpable and affords no protection from legal liability."); cf. *Nieto v. Pence*, 578 F.2d 640, 642 (5th Cir. 1978) (adopting a constructive-knowledge rule in the context of an action for fraudulent nondisclosure so that the defendant could "not close his eyes to the truth"). Thus, we agree with the vast majority of jurisdictions that, for the purposes of a negligent-transmission claim, a plaintiff must demonstrate that the defendant had actual or constructive knowledge of his or her infection.

¶ 16. The parties disagree on what type of evidence is sufficient to impute constructive knowledge to a defendant. See *John B.*, 137 P.3d at 161 ("It must be noted, though, that constructive knowl-

edge . . . encompasses a variety of mental states . . . ." (quotations and citation omitted)). In wife's view, any person who has sexual relations with a person other than his or her primary sexual partner has constructive knowledge that there is a risk of contracting an STD and infecting the primary sexual partner. According to husband, constructive knowledge is narrower and requires at least some evidence that a defendant had reason to know he was infected with an STD. We accept husband's definition as more consistent with our existing law and the law from other jurisdictions.

¶ 17. As explained above, our case law requires "knowledge of danger" to show constructive knowledge sufficient to establish a breach of duty. *Largess*, 130 Vt. at 276, 291 A.2d at 401. This is consistent with the decisions from other jurisdictions that apply the general standard of constructive knowledge to negligent-transmission cases — that the defendant should have known that he or she was carrying an STD. See, e.g., *Berner*, 543 So. 2d at 689 (holding that "one who knows, or should know, that he or she is infected" may be liable); *Meany v. Meany*, 639 So. 2d 229, 234 (La. 1994) (articulating standard that individual "who knows, should know, or should suspect that he or she is infected" can be liable); *McPherson v. McPherson*, 1998 ME 141, ¶ 11, 712 A.2d 1043 (same); *M.M.D. v. B.L.G.*, 467 N.W.2d 645, 647 (Minn. Ct. App. 1991) (person who "should know there is a reasonable possibility that herpes has been contracted" may be liable for transmitting the disease to others); *Hamblen v. Davidson*, 50 S.W.3d 433, 439 (Tenn. Ct. App. 2000) (holding that "an individual who knows or should know he has a venereal disease" can be liable). Courts addressing this issue have uniformly allowed plaintiffs to demonstrate knowledge by showing that the defendant has been diagnosed with an STD or has suffered from symptoms of an STD. See, e.g., *Meany*, 639 So. 2d at 231-32; *M.M.D.*, 467 N.W.2d at 647; *Ray v. Wisdom*, 166 S.W.3d 592, 598-99 (Mo. Ct. App. 2005); *Deuschle v. Jobe*, 30 S.W.3d 215, 219 (Mo. Ct. App. 2000); *Hamblen*, 50 S.W.3d at 439. Even when the symptoms could also be consistent with another illness, this evidence may still be enough for the case to reach the jury. See *Ray*, 166 S.W.3d at 598-99 (when the defendant suffered from Agent Orange exposure and diabetes in addition to herpes, the wife nonetheless presented enough evidence of constructive knowledge to survive summary judgment by showing the defendant probably had symptoms of

herpes). With respect to HIV, one court explained that a plaintiff could demonstrate constructive knowledge by showing that the defendant had actual knowledge that a prior sex partner had been diagnosed with HIV.* See *Doe v. Johnson*, 817 F. Supp. 1382, 1393 (W.D. Mich. 1993).

¶ 18. Thus, both our case law and the decisions from other jurisdictions support husband's position and the trial court's decision. A defendant must have actual or constructive knowledge that he is infected with a disease to be liable for negligent transmission of that disease.

¶ 19. Wife argues for an expanded concept of duty and knowledge in two respects. First, she argues that the duty should be seen as a marital duty — an obligation owed to one's spouse — rather than a duty to avoid sexually transmitting a disease. As the Maine Supreme Judicial Court held in response to a similar argument, there is no support for such a duty in negligence law. See *McPherson*, 1998 ME 141, ¶ 9 (surveying cases). Indeed, such a duty would, in effect, create a form of strict liability.

¶ 20. Related to this marital-duty argument is wife's claim that she would not have consented to sexual intercourse had she known of husband's infidelity. Wife's consent was integral to her battery claim, which was dismissed by the trial court on Rule 12(b)(6) grounds. See *Christman v. Davis*, 2005 VT 119, ¶ 6, 179 Vt. 99, 889 A.2d 746 (stating that medical provider commits battery if the provider's conduct exceeds the scope of patient's consent). We previously affirmed that decision, *Endres*, 2006 VT 108, ¶ 6, and now conclude that wife's consent has no bearing on her negligence claim.

¶ 21. Wife next argues that we should impute constructive knowledge to all individuals who engage in sexual activity because sexual contact is inherently risky. Thus, under wife's theory, any sexual contact would be sufficient to create liability. While we are

---

* The decisions from other jurisdictions do not necessarily exhaust the circumstances in which constructive knowledge can be shown. At least with respect to the transmission of HIV/AIDS, one commentator has argued that constructive knowledge should be found for defendants who engage in high risk activities, including intravenous drug use, homosexual intercourse, unprotected sex with multiple partners, and prostitution. J. Turcotte, *When You Should Have Known: Rethinking Constructive Knowledge in Tort Liability for Sexual Transmission of HIV*, 52 Me. L. Rev. 261, 296 (2000).

cognizant of the risks of sexual contact, we decline to create such a broad duty. Moreover, there is no need to do so in this case because wife's theory of negligence is not related to the facts of her case. She has offered no evidence that husband knew of any risk of transmitting a sexual disease based on the incidence of such diseases in the population. Instead, wife contends that the risk of transmitting an STD has become so great that we should find constructive knowledge as a matter of law. In essence, we are asked to eliminate the knowledge element of tort liability. Again, as with her argument about marital fidelity, wife asks us to create a novel form of strict liability.

¶ 22. One court has considered whether to apply strict liability to cases involving transmission of STDs and rejected the application of that theory. See *Johnson*, 817 F. Supp. at 1397-99. The court analyzed the strict-liability claim under the Restatement (Second) of Torts § 519 (1965), and found the doctrine inapplicable, because "sexual activity . . . is not an inherently or abnormally dangerous activity." *Johnson*, 817 F. Supp. at 1399. Since that decision, two law review articles have urged the adoption of strict liability for transmission of a sexual disease at least in some instances. See D. Pollard, *Sex Torts*, 91 Minn. L. Rev. 769, 804-24 (2007); V. Sentome, *Attacking the Hidden Epidemic: Why a Strict Liability Standard Should Govern the Transmission of Sexually Transmitted Diseaeses*, 2006 U. Chi. Legal F. 409, 427-40.

¶ 23. We decline to make a ruling based on strict liability. Wife has neither relied on nor briefed that theory. Moreover, the factual record in this case is extremely sparse. Wife has alleged that husband had sex with another person. There is no allegation of when this sex occurred, except that it occurred during the marriage. Furthermore, wife submitted no evidence concerning whether husband used a condom, how frequently he had intercourse, or how many partners he had. Thus, wife asks us to impose strict liability simply because husband had one extramarital sexual encounter, irrespective of the circumstances.

¶ 24. While we cannot accept this invitation, we do not reject the policy arguments for strict liability in similar cases. STDs are a major health threat in the United States and in Vermont. More than sixty-five million Americans are currently infected with an incurable STD, and fifteen million more become infected with a one or more STDs each year. Ctrs. for Disease Control &

Prevention, *Tracking the Hidden Epidemics: Trends in STDs in the United States* 1 (2000), http://www.cdc.gov/nchstp/dstd/ Stats_Trends/Trends2000.pdf. In particular, HPV infects an alarmingly high number of Americans. See *id.* at 2 (reporting that twenty million Americans are currently infected with HPV, with an estimate of more than five million more cases each year). Indeed, HPV represents the fastest growing STD in this country. Am. Soc. Health Ass'n, *Sexually Transmitted Diseases in America: How Many Cases, and At What Cost?* fig.1 (1998), http://www.kff.org/womenshealth/1445-std_rep.cfm. We recognize that establishing constructive knowledge of infection will be difficult in many cases. Several forms of HPV are subclinical and do not produce any symptoms for years, and in men HPV rarely produces symptoms or leads to other health problems. Ctrs. for Disease Control & Prevention, *HPV and Men Fact Sheet* (2007), http://www.cdc.gov/STD/hpv/STDFact-HPV-and-men.htm. Strict liability for the transmission of an STD, without disclosure, could increase accountability by requiring disease transmitters to internalize the costs of their actions, encourage testing and disclosure, and ultimately educate the public about this serious health risk.

¶ 25. On a final note, we acknowledge that, to a limited extent, the Legislature has entered this area of the law and may be in a better position than the courts to provide an appropriate remedy. For example, 18 V.S.A. § 1106 makes it a crime for a person to have "sexual intercourse while knowingly infected with gonorrhea or syphilis." In connection with that provision, § 122(a) provides that a person "injured or damaged by a violation of this title . . . may bring an action for equitable relief or damages arising from such violation." In their current form, these statutes are not directly related to this case because § 1106 does not list HPV, and, in any event, wife could not overcome the requirement in § 1106 to demonstrate that husband was "knowingly infected." We encourage the Legislature to consider the overwhelming and increasing social costs of STDs like HPV and to revisit these statutes to determine whether the list of STDs should be expanded and whether a broader standard for liability is appropriate.

*Affirmed.*