DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**YULIA FOREST KOHL,**
Appellant,

v.

**NORMAN DEAN KOHL, JR.,**
Appellee.

No. 4D13-1194

[October 1, 2014]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; James W. McCann, Judge; L.T. Case No. 43-2009DR000083.

James P. Curry, Curry, PL, Jupiter, for appellant.

Bryan J. Yarnell of Gilbert|Yarnell, Palm Beach Gardens, for appellee.

GROSS, J.

The circuit court dismissed appellant Yulia Forest Kohl's claim of negligent transmission of a sexually transmissible disease with prejudice for her failure to track the language of section 384.24, Florida Statutes (2013). An issue on appeal is one of first impression for this state: whether a cause of action for negligent transmission of a sexually transmissible disease may be asserted upon common law negligence principles. Although we hold that such a claim may sound in common law negligence, we nonetheless affirm the dismissal of the complaint; the pleading failed to demonstrate even the defendant's constructive knowledge that he carried a sexually transmissible disease, much less the actual knowledge that would be required to state a claim for transmitting the specific disease at issue in this case.

### *The Pleadings in the Circuit Court*

On an appeal from an order granting a motion to dismiss, we "treat the factual allegations of the complaint as true and . . . consider those allegations in the light most favorable to the plaintiff[]." *Hollywood Lakes*

*Section Civic Ass'n v. City of Hollywood*, 676 So. 2d 500, 501 (Fla. 4th DCA 1996) (citing *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030 (Fla. 4th DCA 1994)).

In January 2009, the former wife filed a two-count petition in the circuit court, seeking (I) to dissolve her marriage with appellee Norman Kohl ("the former husband") and (II) to extract damages from him "for assault by way of the transmission of the" human papillomavirus ("HPV"). Upon the former husband's motion, the trial court severed Count II, permitting entry of an amended final judgment of dissolution of marriage.

By June 2012, the former wife's second amended complaint attempted to state a cause of action for negligent transmission of a sexually transmissible disease, specifically HPV. This claim was based upon the former husband's failure to warn the former wife during their marriage that he had HPV. The disease manifested in June 2008, when the former wife learned from a routine pap smear that she had contracted "high risk" HPV, resulting in the development of "precancerous cell changes."

The complaint asserted two bases to establish the former husband's constructive knowledge that he had the virus. First, the pleading alleged that the former husband "engaged in extra-marital affairs and hired multiple prostitutes and escorts during the course of their marriage." Second, the complaint asserted that the former husband "knew or should have known he was exposed to HPV as his ex-wife [(prior to the former wife)] had undergone a hysterectomy." There were no allegations that the former husband had been diagnosed with HPV or that he had experienced symptoms of the disease.

Given such characterization of the former husband's knowledge that he carried HPV, the former wife alleged that her former husband "had a duty of reasonable care . . . either to warn her or take other precautions to prevent the spread of the [HPV] with which [former husband] was infected." By failing to issue such a warning, the pleading alleged that the former husband breached this duty and, in turn, proximately caused the former wife to contract HPV, resulting in damages for "past and future pain and suffering, past and future medical expenses, past and future mental pain and suffering, and past and future loss of full function of mind and body."

### Procedural Posture

The former husband moved to dismiss the negligence count, asserting pursuant to the Second District's decision in *Gabriel v. Tripp*, 576 So. 2d 404 (Fla. 2d DCA 1991), that a civil cause of action for negligent

transmission of a sexually transmissible disease is cognizable only where the plaintiff tracks the language of section 384.24, Florida Statutes (2013). To satisfy the statute, the former husband contended that the former wife was required to allege (1) that he had *actual* knowledge he "was infected with one of the sexually transmissible diseases enumerated in section 384.24" and (2) that he "had been informed that said disease could be communicated through sexual intercourse." The former husband argued the complaint alleged "no basis for asserting [he] 'knew' he had HPV."

The circuit court dismissed the negligence count with prejudice, due primarily to the former wife's failure to "track the allegations required for a civil action predicated upon § 384.24 Florida Statutes." Classifying the matter as an "attempt to create a new cause of action," the trial court explained that "Florida courts have required plaintiffs to strictly track th[e] statute." Thus, the former wife failed to state a cause of action in negligence, since she did not assert "actual knowledge of infection on the part of the tortfeasor or actual knowledge that the infection could be transmitted through sexual intercourse."

### *Statutory Violations and Negligence*

"Because the issue of whether a complaint is sufficient to state a cause of action is a question of law," our review is *de novo*. *James v. Crews*, 132 So. 3d 896, 898 (Fla. 1st DCA 2014) (citations omitted).

As developed by the common law, a cause of action for negligence arises where one's "failure to use that degree of care which a reasonably careful person would use under like circumstances" causes injury. *London v. Atl. Mut. Ins. Co.*, 689 So. 2d 424, 425 (Fla. 4th DCA 1997). Common law negligence is open-ended and divorced from intent, *Booth v. Mary Carter Paint Co.*, 182 So. 2d 292, 299 (Fla. 2d DCA 1966), "allow[ing] the plaintiff to claim that any given conduct was negligent." Dan B. Dobbs, *The Law of Torts* § 110, at 257 (2000). Its focus is on the relationship between the actor and person in fact injured. *See, e.g., Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99, 101 (N.Y. 1928).

While negligence has its roots in common law, legislative enactments play an important role in shaping standards of conduct. W. Page Keeton et al., *Handbook on the Law of Torts* § 35 (3d ed. 1964). Proof that a defendant violated a statute—including a criminal statute—can be categorized in a negligence case in one of three ways, depending on the statute's purpose:

(1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence.

*Chevron U.S.A., Inc. v. Forbes,* 783 So. 2d 1215, 1219 (Fla. 4th DCA 2001) (quoting *Grand Union Co. v. Rocker,* 454 So. 2d 14, 15 (Fla. 3d DCA 1984)).

Focusing on the final category, Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because "the standard of conduct or care embraced within such [a] legislative . . . measure[ ] represent[s] a standard of at least reasonable care which should be adhered to in the performance of any given activity.'" *Dusine v. Golden Shores Convalescent Ctr., Inc.,* 249 So. 2d 40, 41-42 (Fla. 2d DCA 1971) (quoting *Alford v. Meyer,* 201 So. 2d 489, 491 (Fla. 1st DCA 1967)); *see also* Fla. Std. Jury Instr. (Civ.) 401.9. Such statutory violation evidence thus will not overhaul the negligence cause of action, as "the claimant still needs to prove all elements of actionable negligence." *Tierney v. Black Bros. Co.,* 852 F. Supp. 994, 1000 (M.D. Fla. 1994) (citing *deJesus v. Seaboard Coast Line R.R. Co.,* 281 So. 2d 198, 201 (Fla. 1973); *Hurd v. Munford, Inc.,* 378 So. 2d 86, 89 (Fla. 1st DCA1979)).

### *Negligent Transmission of a Sexually Transmissible Disease*

Nationwide, courts "have long imposed liability on individuals who have harmed others by transmitting communicable diseases," paving the way for recognition of "a cause of action for the negligent transmission of sexually transmitted diseases." *John B. v. Superior Court,* 137 P.3d 153, 159 (Cal. 2006). While Florida courts have embraced this national consensus,[1] *see Hogan v. Tavzel,* 660 So. 2d 350, 351 n.1 (Fla. 5th DCA 1995) ("Lawsuits on the *negligent* transmission of genital herpes have been recognized in this state." (citation omitted)); *Gabriel v. Tripp,* 576 So. 2d 404, 405 (Fla. 2d DCA 1991), Florida case law has suggested that such a suit *must* be predicated on a statutory violation.

---

[1]*See, e.g., State v. Lankford,* 102 A. 63 (Del. 1917); *Crowell v. Crowell,* 105 S.E. 206, 208 (N.C. 1920); *Kathleen K. v. Robert B.,* 198 Cal. Rptr. 273, 276-77 (Cal. Ct. App. 1984); *Berner v. Caldwell,* 543 So. 2d 686, 690 (Ala. 1986), *overruled on other grounds by Ex parte Gen. Motors Corp.,* 769 So. 2d 903 (Ala. 1999); *Long v. Adams,* 333 S.E.2d 852, 854-55 (Ga. Ct. App. 1985); *Doe v. Johnson,* 817 F. Supp. 1382, 1393 (W.D. Mich. 1993).

This limitation on a common law cause of action derives from the application of section 384.24, Florida Statutes (2013), a criminal statute that makes it a first-degree misdemeanor to knowingly transmit certain sexually transmissible diseases. *See* §§ 384.34, 775.082(4)(a), 775.083(1)(d), Fla. Stat. (2013). The statute provides in relevant part:

> It is unlawful for any person who has chancroid, gonorrhea, granuloma inguinale, lymphogranuloma venereum, genital herpes simplex, chlamydia, nongonococcal urethritis (NGU), pelvic inflammatory disease (PID)/acute salpingitis, or syphilis, when such person knows he or she is infected with one or more of these diseases and when such person has been informed that he or she may communicate this disease to another person through sexual intercourse, to have sexual intercourse with any other person, unless such other person has been informed of the presence of the sexually transmissible disease and has consented to the sexual intercourse.

§ 384.24(1), Fla. Stat. (2013).

In *Gabriel*, the Second District ostensibly made tracking section 384.24 a necessary component to a claim for negligent transmission of a sexually transmissible disease. There, the trial court dismissed a negligence suit in which the plaintiff attempted to track the language of section 384.24 and alleged she contracted genital herpes after engaging in sexual intercourse with the defendant. 576 So. 2d at 404. The Second District agreed with the plaintiff that "such a negligence cause of action is cognizable in Florida." *Id.* However, the court disagreed that a violation of section 384.24 constitutes negligence per se, holding that the statute is "not designed to protect a particular class of persons, but rather the public in general." *Id.* at 405. With that ruling, we do not disagree.

From this determination, the Second District explained "that if a plaintiff is able to file a complaint that tracks section 384.24, that plaintiff will have presented prima facie evidence of negligence, not absolute proof of negligence." *Id.* The court then took its reasoning a step further, however, by holding that

> in order to state a cognizable cause of action for negligent transmission of a sexually transmissible disease, a plaintiff *must allege* that the defendant *knew* he or she was infected with one of the sexually transmissible diseases *enumerated in*

- 5 -

*section 384.24*, that the defendant had been informed that said disease could be communicated through sexual intercourse, and that the defendant had sexual intercourse with the plaintiff without informing the plaintiff of the presence of the disease and without securing the plaintiff's consent to sexual intercourse under such circumstances.

*Id.* (emphasis added). Since the plaintiff in that case "fail[ed] to set forth the allegations necessary to track section 384.24, Florida Statutes (1989)," the court held she failed "state a cognizable cause of action." *Id.*

We disagree with *Gabriel's* broad holding that section 384.24 exclusively controls the elements of the negligence cause of action to which it applies. Unless "liability is limited or abrogated by legislative enactments," *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1207 (Fla. 1997), a plaintiff asserting common law negligence need not "establish the violation of a relevant safety statute or regulation." *Wenzel v. Boyles Galvanizing Co.*, 920 F.2d 778, 782 n.1 (11th Cir. 1991) (applying Florida law). Further, a statute accomplishes such displacement only where it "unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist." *Thornber v. City of Fort Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990). Therefore, in a case of common law negligence based on the transmission of a sexually transmissible disease, section 384.24 does not exclusively delineate the elements of the cause of action. Nor are the diseases specified in section 384.24 the only diseases that might form the basis of a negligence cause of action; even though HPV is not one of the diseases enumerated in the statute, its transmission could still form the basis of a common law negligence claim. A violation of section 384.24 is evidence of negligence, not a catalog of the required elements of the cause of action. *See* Fla. Std. Jury Instr. (Civ.) 401.9.[2]

The coexistence of common law negligence and a garden variety statutory violation is grounded in the common law's role as "an evolving body of law." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533 n.28 (1983). The common law "'must keep pace with changes in our society' and 'may [even] be altered when the

---

[2]We note that, as a criminal statute, section 384.24 requires proof that a person "know[ ] he or she is infected with one or more" of the enumerated diseases **and** that "such person has been informed that he or she may communicate this disease to another person through sexual intercourse." Proof of the criminal violation, which requires such knowing conduct, will also be powerful evidence of negligence.

reason for the rule of law ceases to exist, or when the change is demanded by public necessity or required to vindicate fundamental rights.'" *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1104 (Fla. 2008) (quoting *Stone v. Wall*, 734 So. 2d 1038, 1043 (Fla. 1999)). As one court has explained:

> One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, 'Law must be stable, and yet it cannot stand still.'

*Hack v. Hack*, 433 A.2d 859, 868–69 (Pa. 1981). One way that common law negligence evolves with changes in society is that it incorporates contemporary standards of conduct evidenced by legislative enactments.

This is not, therefore, a case tasking us with "creating" a new cause of action unrecognized at common law. *See, e.g., Jews for Jesus, Inc.*, 997 So. 2d at 1104 (recognizing that "the tort of false light did not exist at common law"); *Estate of McCall v. United States*, 134 So. 3d 894, 915 (Fla. 2014) ("At common law, Florida did not recognize a cause of action for wrongful death." (citation omitted)). Negligence is a traditional tort; negligent transmission of a sexually transmissible disease is merely a variant of it. We join the majority of states in recognizing negligent transmission of a sexually transmissible disease as a common law negligence action.

### The Contours of the Claim

Our next task is to determine whether the former wife's complaint stated a cause of action. "To state a claim for negligence, the plaintiff must allege the existence of a duty, breach of that duty, causation, and damages." *Horton v. Freeman*, 917 So. 2d 1064, 1066 (Fla. 4th DCA 2006). Regarding the duty element, "'imposition of a duty is nothing more than a threshold requirement that if satisfied, merely opens the courthouse doors.'" *Demelus v. King Motor Co. of Fort Lauderdale*, 24 So. 3d 759, 763

(Fla. 4th DCA 2009) (quoting *Whitt v. Silverman*, 788 So. 2d 210, 221 (Fla. 2001)).  As we have explained:

> [W]hether a duty exists is a question of law for the court. *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1110 (Fla. 2005).  Crucial to the duty inquiry is "whether the defendant's conduct foreseeably create[s] a broader 'zone of risk' that poses a general threat of harm to others."  *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  "[T]he zone of risk created by a defendant defines the scope of the defendant's legal duty and the scope of the zone of risk is in turn determined by the foreseeability of a risk of harm to others." *Smith v. Fla. Power & Light Co.*, 857 So. 2d 224, 229 (Fla. 2d DCA 2003).

*Knight v. Merhige*, 133 So. 3d 1140, 1144-45 (Fla. 4th DCA 2014); *see also Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) ("The core predicate for imposing liability is one of reasonable foreseeability—the cornerstone of our tort law.").

"In applying the 'foreseeable zone of risk' test to determine the existence of a legal duty, the supreme court has focused on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff." *Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont'l Grain Co.*, 715 So. 2d 343, 345 (Fla. 4th DCA 1998).  When a sexually transmissible disease—such as HPV—"is almost exclusively spread through sexual contact, it is foreseeable that one's sexual partner is susceptible to the contagion if the infected partner is aware he has the disease or suffers from symptoms of the disease." *Deuschle v. Jobe*, 30 S.W.3d 215, 219 (Mo. Ct. App. 2000).  As a consequence, a person who knows that he or she suffers such an illness has "a duty either to avoid sexual contact with uninfected persons or, at least, to warn potential sex partners that they have [it] before sexual contact occurs."  *R.A.P. v. B.J.P.*, 428 N.W.2d 103, 108 (Minn. Ct. App. 1988); *see also B.N. v. K.K.*, 538 A.2d 1175, 1179 (Md. 1988) (stating that an "infected person has a duty to take reasonable precautions–whether by warning others or by avoiding contact with them–to avoid transmitting the disease"); *Hogan*, 660 So. 2d at 352 (recognizing that "[a] certain amount of trust and confidence exists in any intimate relationship, at least to the extent that one sexual partner represents to the other that he or she is free from venereal or other dangerous contagious disease" (quoting *Kathleen K. v. Robert B.*, 198 Cal. Rptr. 273, 276-77 (Cal. Ct. App. 1984)).

The linchpin of liability for imposing a legal duty to avoid negligent transmission of a sexually transmissible disease is the defendant's knowledge that he or she harbors the disease. A duty will not lie where the defendant is unaware of the condition, since the risk created by his or her sexual activity is unforeseen. *See* Restatement (Second) of Torts § 289 cmt. b (1965) (stating that "[i]n order that an act may be negligent it is necessary that the actor should realize that it involves a risk of causing harm to some interest of another").

In other states, courts require the plaintiff to "show that the defendant had actual or *constructive* knowledge that he or she was infected with the transmitted STD." *Endres v. Endres*, 968 A.2d 336, 340 (Vt. 2008) (emphasis added); *Rossiter v. Evans*, No. 08-1815, 2009 WL 5125922, at *3 n.5 (Iowa Ct. App. Dec. 30, 2009) ("The majority of courts that have dealt with this issue have concluded that constructive knowledge of a sexually transmitted disease is sufficient for the imposition of liability."); *John B.*, 137 P.3d at 160 ("[W]e are not persuaded that California should be the first jurisdiction in the country to limit liability for the negligent transmission of HIV only to those who have actual knowledge they are HIV positive."); *Berner*, 543 So. 2d at 689; *McPherson v. McPherson*, 712 A.2d 1043, 1046 (Me. 1998); *Deuschle*, 30 S.W.3d at 219. The availability of a constructive knowledge showing is critical, since "[a] plaintiff will rarely be able to show that a defendant had actual knowledge of his or her infection." *Endres*, 968 A.2d at 341.

In Florida, many negligence actions that are predicated upon the defendant's knowledge apply the "actual *or* constructive knowledge" standard. *See, e.g., Freeman v. BellSouth Telecomms., Inc.*, 954 So. 2d 45, 46-47 (Fla. 1st DCA 2007) (owner's duty to maintain his or her premises in a reasonably safe condition); *Williams v. Joseph L. Rozier Machinery Co.*, 135 So. 2d 763, 765 (Fla. 2d DCA 1961) (retailer of a defective product); *Grant v. Thornton*, 749 So. 2d 529, 532 (Fla. 2d DCA 1999) (negligence against landlord). We see no reason to depart from the majority view incorporating actual *or* constructive knowledge into the elements of the tort here at issue, particularly in light of our legislature's declaration that "sexually transmissible diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state and to visitors to the state." § 384.22, Fla. Stat. (2013).

Applying an actual or constructive knowledge standard, our sister states have carved out two situations sufficient to impose a duty in negligence for transmitting a sexually transmissible disease. First, a defendant will have the requisite knowledge if he or she has been formally diagnosed with a sexually transmissible disease by a medical professional.

*See John B.*, 137 P.3d at 160. Second, the existence of obvious symptoms—such as rashes, genital warts, or discharge—will suffice to impute constructive knowledge. *See, e.g., M.M.D. v. B.L.G.*, 467 N.W.2d 645, 647 (Minn. Ct. App. 1991) ("A reasonable person with recurring sores on the genitals, who also has been told by a physician that a herpes culture may be advisable, should know there is a reasonable possibility that herpes has been contracted. In addition, a reasonable person should know an acne-type condition on the genitals could be communicated to others through sexual contact."); *Meany v. Meany*, 639 So. 2d 229, 234 (La. 1994) ("Certainly, the presence of open, oozing genital sores indicates a serious problem, whether or not a diagnosis exists. If a defendant has experienced an attack or has sought medical advice concerning such symptoms, he would likely be deemed by the courts to possess the requisite knowledge, whether or not an actual diagnosis could be proved.").

As we discuss below, however, a requirement of actual knowledge to establish a legal duty is applicable where the disease at issue is HPV, which is uniquely prevalent and often not symptomatic.

### *The Instant Case*

In this case, the former wife's complaint raises two allegations to infer the former husband's knowledge of his HPV infection. Both are insufficient to satisfy even a constructive knowledge requirement, and are far below the actual knowledge standard applicable to HPV.

First, the complaint contended that the former husband engaged in "high-risk" sexual behavior, such as having sexual relations outside his marriage and sleeping with prostitutes. Second, it contends that the former husband "knew or should have known he was exposed to HPV as his ex-wife had undergone a hysterectomy." Both grounds seek to extend liability beyond constructive knowledge, from what the defendant "should have known," to what "may have happened"—a privacy invasion we believe "open[s] a door better left closed." *Doe v. Johnson*, 817 F. Supp. 1382, 1393 (W.D. Mich. 1993).

The complaint's "high-risk" allegation is similar to one rejected in *Endres*, where a plaintiff asserting negligent transmission of HPV alleged her husband "knew that by engaging in an extramarital relationship he exposed himself to potential risk of becoming infected with an incurable infection which he could then transmit." 968 A.2d at 338. Surveying Vermont case law and decisions from other jurisdictions, the court took a "narrower" approach, requiring "at least some evidence that [the] defendant had reason to know he was infected with an STD." *Id.* at 341.

We agree with the approach in *Endres*, in that "constructive knowledge" encompasses only "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law." *Black's Law Dictionary* 888 (8th ed. 2004); *see also Wells v. Palm Beach Kennel Club*, 35 So. 2d 720, 721 (Fla. 1948). "Policy considerations strongly suggest that merely engaging in 'high risk' activity does not satisfy the should-have-known standard and does not, nor should it, impose a duty upon individuals to disclose previous high-risk behavior." Timothy J. Hasken, *A Duty to Kiss and Tell? Examining the Uncomfortable Relationship Between Negligence and the Transmission of HPV*, 95 Iowa L. Rev. 985, 998 (2010).

From a logistical standpoint, developing the contours of "high-risk" behavior would be an unwieldy, unpredictable task. As the court explained in *Johnson*, 817 F. Supp. at 1394:

> [I]mposition of a duty to disclose one's "high risk" status raises a number of questions: as a matter of law, what is "high risk" activity? Who is in this "high risk" group? How should "high risk" be defined? Even if a workable definition of "high risk" were discovered, would a duty be imposed on non-high risk group members to disclose to every potential sex partner all prior sexual contacts with partners who were so-called "high risk" group members? Would the duty of disclosure encompass prior sexual contacts with others known to be "promiscuous" or "sexually active?" What are the equal protection implications of imposing such a standard on a class of people? What are the privacy implications of imposing such a standard on a class of people? Would the duty eventually extend to everyone who has had any sexual contact outside of a monogamous relationship?

*Id.* Like *Johnson*, we decline to open Pandora's box by imposing a duty in negligence for engaging in "high risk" sexual behavior.

Similar logic bars the imposition of a legal duty based on the former wife's allegation that the former husband knew of his HPV because his prior wife underwent a hysterectomy. A hysterectomy is "an operation to remove a woman's uterus." Rebecca L. Van Court, *Uterine Fibroids and Women's Right to Choose*, 26 J. Legal Med. 507, 510 (2005) (citation omitted). It can be justified for myriad reasons, not the least of which include: fibroid tumors, endometriosis, prolapse of the uterus, ovarian cysts, cancer of the reproductive organs, ectopic pregnancy, pelvic inflammatory disease, abnormal uterine bleeding, or premenstrual syndrome. *Gynecological Malpractice Litigation*, 64 Am. Jur. Trials 1, § 70.

Without evidence linking the hysterectomy to HPV, there is no justifiable reason to believe a reasonable person in the former husband's shoes should have *known* he had HPV from that fact alone. The former husband's "knowledge" in this case cannot be predicated on remote chance and guesswork.

For these reasons, we hold that the former wife's complaint failed to state a claim for negligent transmission of a sexually transmissible disease.

### *The Nature of HPV Requires That a Defendant Have Actual Knowledge That He or She Harbors the Disease in Order to be Liable in Common Law Negligence*

As an alternative basis for affirmance, the former husband urges this Court, upon public policy grounds, to hold that HPV is excluded from the tort of negligent transmission of a sexually transmissible disease. Although we do not agree that transmission of the disease should be excluded from negligence liability, we agree that the tort can be based only on a person's actual knowledge that he or she carries the disease, and not on constructive knowledge.

Recently, this Court confirmed that "[c]onsiderations of public policy are appropriate in determining whether a negligence cause of action will lie." *Knight*, 133 So. 3d at 1150. As we explained:

> Finding that a legal duty exists in a negligence case involves the public policy decision that a "defendant should bear a given loss, as opposed to distributing the loss among the general public." *Levy v. Fla. Power & Light Co.*, 798 So. 2d 778, 780 (Fla. 4th DCA 2001), *rev. den.* 902 So. 2d 790 (Fla. 2005). A legal "[d]uty is an allocation of risk determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed." *Id.* (quoting *Vaughan v. Eastern Edison Co.*, 719 N.E.2d 520, 523 (Mass. App. Ct. 1999)).

*Id.* at 1149-50 (quoting *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. 4th DCA 2005)).

The crux of the former husband's argument is that "HPV presents unique challenges in the context of assigning liability for injury" since it is uniquely prevalent in modern society and many HPV carriers do not even

know they are infected. HPV is the most common and fastest growing sexually transmissible infection in this country, affecting nearly 79 million Americans, with 14 million people becoming newly infected each year. Ctrs. For Disease Control & Prevention, *Genital HPV Infection – Fact Sheet* (2014), http://cdc.gov/std/HPV/STDFact-HPV.htm. The result is that "[a]t least half of sexually active men and women will contract HPV during the course of their lifetimes." Elizabeth J. Chen, *Equal Protection: Why the HPV Vaccine Should Be Mandated for Both Boys and Girls*, 38 Wash. U. J.L. & Pol'y 289, 292-93 (2012).

"HPV is most often contracted during vaginal and anal sex, but may also be passed through other sexual activities including oral sex and genital-to-genital contact." Anthony D. Pegion and Andrew Zacher, *Mandating HPV Vaccinations in the United States*, 14 DePaul J. Health Care L. 169, 171 (2011). Currently, scientists have found "at least thirty distinct strains of HPV that can infect human genitalia." Deana A. Pollard, *Sex Torts*, 91 Minn. L. Rev. 769, 776 (2007).

> Low-risk strains may cause genital warts, whereas high-risk strains may cause cervical cancer or other more rare types of cancer. However, in the vast majority of HPV cases, the infected persons are unaware of their infections. With most HPV infections, the infected person experiences no symptoms and there is no commercially available way to test for HPV. Therefore, HPV is very often unknowingly passed between sexual partners.

Hasken, *supra*, at 993. It has been said "the more dangerous strains cause 'subclinical' infections, so-called because they are invisible and often go undetected or may lie dormant for years." Pollard, *supra*, at 776.

Currently, the CDC does not even recommend an HPV test for men. Ctrs. For Disease Control & Prevention, *HPV and Men – Fact Sheet* (2014), http://cdc.gov/std/hpv/stdfact-hpv-and-men.htm. Thus, in most cases — particularly those where the defendant is male — "establishing constructive knowledge of infection will be difficult." *Endres*, 968 A.2d at 343.

Given the disease's prevalence, and the fact that its effects may remain dormant for years if not decades, we hold that only a defendant with actual knowledge that he or she has HPV should be subject to liability in negligence for its transmission. Accordingly, a separate reason for affirmance is the absence of allegations in the former wife's second

amended complaint establishing the former husband's actual knowledge of his predicament.

*Affirmed.*

GERBER, J., concurs.
CONNER, J., concurs in result only.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**